## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**EARL SCOTT BREWER AND**                                 **CIVIL ACTION**
**SONY BREWER**

**VERSUS**                                                              **CASE NO. 12-1836**

**MOTIVA ENTERPRISES, LLC,**                          **SECTION: "G"(4)**
**COOPER T SMITH MOORING CO. INC.**
**AND SGS NORTH AMERICA, INC.**

### ORDER AND REASONS

Currently before the Court is Plaintiffs Earl Scott Brewer ("Brewer") and his wife Sony Brewer's (collectively, "Plaintiffs") Motion to Remand.[1]  After reviewing the motion, oppositions, supplemental memorandum, sur-reply, the record, and the applicable law, the Court will grant the pending motion.

### I.  Background

*A. Factual Background*

On June 5, 2012, Brewer filed a Petition for Damages in the Twenty Third Judicial District Court, Parish of St. James, against Defendants Motiva Enterprises, LLC ("Motiva"), SGS North America, Inc. ("SGS"), and Cooper/T. Smith Mooring Co. ("Cooper").[2]  In the Petition for Damages, Brewer claims that he was employed by Cooper as a linesman at all material times.[3] Brewer further alleges that "[o]n April 10, 2012, petitioner was in the process of letting the barge, Caribbean, go from the Motiva Convent 1 dock in St. James Parish. While pulling on the line to said

---

[1] Rec. Doc. 13.

[2] Rec. Doc. 1.

[3] Rec. Doc. 1-2 at ¶ 2

1

barge to release said vessel, petitioner...sustained serious injuries to his neck, back and shoulder."[4]

Plaintiffs brought a claim for negligence against Motiva and SGS, who "owned, operated, manned, maintained, and controlled the equipment located at the Motiva dock involved."[5] Plaintiffs allege that a proximate cause of the accident was Motiva and SGS' negligence "in failing to maintain the winches located at the dock in question which were designed to be used for mooring and unmooring vessels at said dock."[6] Plaintiffs also bring a claim of negligence against Cooper in its capacity as Jones Act employer for failing to furnish a safe work place.[7] Plaintiffs claim that Brewer was a Jones Act seaman because he "was permanently assigned to a vessel or fleet of vessels under the sole operation and control of Cooper" and that he "performed a substantial portion of his work as a linesman working aboard a vessel or fleet of vessels under the operation and control of Cooper."[8] Sony Brewer, Earl Scott Brewer's spouse, seeks recovery for loss of consortium.[9]

### B. Procedural Background

On July 13, 2012, Defendants Motiva and SGS filed a notice of removal with consent from Cooper.[10] In the notice, Motiva and SGS claim that Plaintiffs have fraudulently plead seaman status, and therefore this action is removable to federal court. Defendants invoke this Court's diversity and

---

[4] *Id.* at ¶ 3.

[5] *Id.* at ¶ 4.

[6] *Id.* at ¶ 5.

[7] *Id.* at ¶ 6.

[8] *Id.*

[9] *Id.* at ¶ 9.

[10] Rec. Doc. 1.

admiralty jurisdiction to initiate removal.[11]

Currently before the Court is Plaintiffs' Motion to Remand filed on August 1, 2012.[12] On September 27, 2012, Cooper filed a motion for summary judgment on seaman status.[13] Defendants Cooper, Motiva, and SGS filed their oppositions to the motion to remand on October 2, 2012.[14] On October 16, 2012, Plaintiffs filed a supplemental memorandum in support of the pending motion.[15] On the same day, Cooper filed a sur-reply with regard to the motion to remand.[16]

## II.  Law

### A. Standard for Motion to Remand

In general, suits properly brought in state court under the Jones Act may not be removed.[17] However, removal may be achieved if a defendant can show that the plaintiff's Jones Act claim was fraudulently pled to prevent removal.[18] Jones Act defendants can therefore defeat remand by showing  the assertion of seaman status is "baseless in law and in fact and serve[s] only to frustrate

---

[11] *Id.*

[12] Rec. Doc. 13.

[13] Rec. Doc. 28.

[14] Rec. Doc. Nos. 30, 31.

[15] Rec. Doc. 38.

[16] Rec. Doc. 40.

[17] *See* 46 U.S.C. § 688 (incorporating by reference the Federal Employers Liability Act); *Burchett v. Cargill, Inc.*, 48 F.3d 173, 175 (5th Cir. 1995).

[18] *Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (citing *Preston v. Grant Advertising, Inc.*, 375 F.2d 439, 440 (5th Cir. 1967).

federal jurisdiction."[19] The Fifth Circuit has stated that the defendant's burden is a heavy one:

> Defendants must prove that the allegations of the complaint were fraudulently made, and any doubts should be resolved in favor of the plaintiff. As in fraudulent joinder cases, defendant's burden of persuasion is a heavy one. The district court must resolve disputed questions of fact from the pleadings and affidavits in favor of the plaintiff. The removing party must show that there is no possibility that plaintiff would be able to establish a cause of action.[20]

"[W]hile federal courts ordinarily look only to the plaintiff's pleadings in determining whether a Jones Act claim has been stated, defendants may pierce the pleadings to show that the Jones Act claim has been fraudulently pleaded to prevent removal."[21] Thus, a court may use a "summary judgment-like procedure" to determine whether a Jones Act claim has been fraudulently pled.[22] In making this determination, the district court must resolve disputed questions of fact in favor of the plaintiff.[23]

Specifically, the Fifth Circuit in *Zertuche v. Great Lakes Dredge & Dock Company*,[24] described what the defendant must show to pierce the plaintiff's pleadings and demonstrate that seaman status has been fraudulently pled.[25] "For example, [the defendant] could have submitted employment records either showing that [the plaintiff] was first hired in 2006 or, if he was hired in 2003, that less than 30 percent of his assignment over the course of his entire employment were

---

[19] *Id.* (quoting *Dodd v. Fawvett Publ'ns, Inc.*, 239 F.2d 82, 85 (10th Cir. 1964).

[20] *Id.*

[21] *Id.*

[22] *Hufnagel v. Omega Service Industries*, 182 F.3d 340, 345 (5th Cir. 1999).

[23] *Lackey*, 990 F.2d at 207 (5th Cir. 1993).

[24] 306 Fed. App'x 93, 2009 WL 32528, at *3 (5th Cir. 2009).

[25] *Id.*

4

connected to a vessel in navigation."[26]  However, the court held that the district court "should have

remanded the case because [the defendant] did not carry its burden" where the defendant "did not

submit any employment records, which are already in its control, to refute [the plaintiff's] allegation

that he spent 50 percent of his employment working as a deckhand."[27]

### B.  Jones Act Seaman Status

The United States Supreme Court has articulated a two-part test to determine whether an

employee qualifies as a seaman under the Jones Act. First, "an employee's duties must 'contribut[e]

to the function of the vessel or to the accomplishment of its mission.'"[28] Second, "a seaman must

have a connection to a vessel in navigation (or to an identifiable group of vessels) that is substantial

in terms of both its duration and its nature."[29]  The purpose of the substantial connection requirement

is "to separate the sea-based maritime employees who are entitled to Jones Act protection from those

land-based maritime workers who have only a transitory or sporadic connection to a vessel in

navigation, and therefore whose employment does not regularly expose them to the perils of the

sea."[30]

In *Chandris v. Latsis*,[31] the Supreme Court adopted the Fifth Circuit's "thirty percent rule"

---

[26] *Id.* at *3 (citing *Breaux v. Halliburton Energy Servs., Inc.*, No. 04-1636, 2004 U.S. Dist. LEXIS 21418, at *5-7 (E.D.La. Oct. 22, 2004) (finding that defendant had pierced the pleadings to show that plaintiff could not possibly meet the 30-percent threshold by submitting objective evidence in the form of the plaintiff's employment records)).

[27] *Id.*

[28] *Chandris v. Latsis*, 515 U.S. 347, 368 (1995) (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991).

[29] *Id.*

[30] *Id.*

[31] *Id.*

to determine whether a worker has a substantial connection to a vessel to qualify as a Jones Act seaman.[32]  Specifically, "[a] worker who spends less than about thirty percent of his time in service of a vessel in navigation should not qualify as a seaman under the Jones Act."[33] This temporal requirement is satisfied when the worker spends a substantial part of his work aboard the vessel, as opposed to being merely assigned permanently to a vessel.[34]

The question of whether Jones Act seaman status has been established is a mixed question of law and fact.[35] "If reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury."[36]  However, "summary judgment is mandated where the facts and the law will reasonably support only one conclusion."[37]  In *Teaver v. Seatrax*,[38]  the Fifth Circuit held that because the plaintiff "neither contributed to the work of the vessel nor had a substantial connection to the vessel, there is no reasonable possibility that he can demonstrate seaman status under the Jones Act. Therefore the district court did not err in refusing to remand the case to state court."[39]

However, when there is sufficient evidence in the record to establish a plaintiff's seaman

---

[32] *Id.* at 370.

[33] *Id.* at 371.

[34] *Nunez v. B&B Dredging*, 288 F.3d 271, 276 (5th Cir. 2002).

[35] *Chandris*, 515 at 369; *see also Teaver v. Seatrax*, 434 Fed. App'x 307, 309 (5th Cir. 2011).

[36] *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356 (1991).

[37] *Id.*

[38] 434 Fed. App'x at 311.

[39] *Id.*

status, remand is appropriate. In *Senko v. La Crosse Dredging Corp.*,[40] before the Supreme Court adopted the "30 percent rule," the Supreme Court held that there was sufficient evidence in the record to support the finding that the plaintiff was a member of the dredge's crew, and therefore a Jones Act seaman, "[b]ecause there was testimony introduced by [the plaintiff] tending to show that he was employed almost solely on the dredge, that his duty was primarily to maintain the dredge during its anchorage and for its future trips, and that he would have a significant navigational function when the dredge was put in transit."[41]  However, in *McDermott Int'l, Inc. v. Wilander*,[42] the Supreme Court acknowledged that *Senko*, along with several other Jones Act cases of the late 1950s were "befuddling...because they tie 'seaman' under the Jones Act to 'member of a crew' under the LHWCA."[43] When a proper Jones Act seaman files suit in state court, the action is not removable.[44]

### III.  Parties' Arguments

In support of the pending motion, Plaintiffs argue that Jones Acts claims are generally not removable, except under a few exceptions that are inapplicable here.[45] Plaintiffs contend that under Fifth Circuit precedent, a defendant has a "heavy burden" in seeking removal and must show, when resolving all disputed facts in favor of the plaintiff, that there is no reasonable possibility of establishing a Jones Act claim on the merits or that there has been outright fraud in the plaintiff's

---

[40] 352 U.S. 370 (1957)

[41] *Id.* at 417-18.

[42] 498 U.S. 337 (1991).

[43] *Id.* at 352-53.

[44] 28 U.S.C. § 1445(a); *Pate v. Standard Dredging Corp.*, 193 F.2d 498 (5th Cir. 1952).

[45] Rec. Doc. 13-1 at p. 1.

pleading of jurisdictional facts.[46]

      Plaintiffs argue that there is more than a mere possibility that Brewer is a Jones Act seaman. Plaintiffs highlight that the determination of whether an employee was a Jones Act seaman is a fact intensive analysis.[47] Plaintiffs contend that to determine the substantiality of an employee's vessel related work, the Court must look at his entire work history; however, when an employee has received a new permanent work assignment before the alleged accident, substantiality is measured in relation to his new job.[48]

      Citing the Fifth Circuit in *Lackey*, Plaintiffs aver that the mere assertion of fraud is insufficient to allow removal to federal court, and a defendant must prove that the allegations of the complaint were fraudulently made, again, resolving any doubts in favor of the plaintiff, or that plaintiff has no possibility of succeeding on his claim.[49] Plaintiffs explain that in 2008 Brewer changed his position from a dispatcher/foreman to a full times linesman. Plaintiffs claim that since this reassignment, a substantial part of his work as a lineman includes working aboard a vessel.[50] Plaintiffs contend that "70 to 80 percent of [Brewer's] jobs" included being a "boat operator," and therefore there is more than a mere possibility that Plaintiffs can prove he was a Jones Act seaman.[51]

      In opposition to the pending motion, Cooper "does not dispute that it fully owns, operates and controls the launch boats referenced" and further agrees, "that its boats/launches can be

---

[46] *Id.* at p. 2 (citing *Lackey*, 990 F.2d 202; *Dinpool v. SP Surf, Inc.*, 1994 WL 3518332 (E.D. La. 1994)).

[47] *Id.* at p. 5 (citing *Higginbotham v. Mobil Oil Corp.*, 545 F.2d 422 (5th Cir. 1977)).

[48] *Id.* at p. 6 (citing *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067 (5th Cir. 1986)).

[49] *Id.* at p. 4.

[50] *Id.* at p. 6.

[51] *Id.* at p. 7.

considered an identifiable fleet of vessels."[52] However, Cooper argues that the "problem with Brewer's attempt to elect Jones Act seaman status comes because to elect seaman status, Brewer 'must have a connection with a vessel in navigation that is substantial in both duration and nature' within the meaning of *Chandris*."[53] Specifically, Cooper claims that Brewer cannot be considered a Jones Act seaman because "he spent less than 17% of his overall employment aboard vessels" and thus "no interpretation of the evidence could meet the requirements of *Chandris*."[54] Therefore, because Cooper claims that Brewer is not a Jones Act seaman, it argues that the pending motion should be denied.[55]

Cooper agrees with Plaintiffs that in determining whether Brewer met the "thirty percent rule" for substantial duration outlined in *Chandris*, the Court should only consider his work record from the time of his new assignment in 2008. Cooper claims that it analyzed Brewer's "entire job duties including the 2,000 or so line handling jobs that Brewer performed in the course and scope of his employment from March of 2008 through the date of his accident on April 10, 2012."[56] Cooper states that it records the start and end time for each job in dispatch logs and these logs were used to "calculate the amount of time [Brewer] was employed by Cooper aboard the Cooper launches each month during the 50 month period."[57] Cooper cites Brewer's testimony to determine how much time was spent aboard a vessel for each job. "The only jobs excluded from consideration

---

[52] Rec. Doc. 30 at p. 5.

[53] *Id.*

[54] *Id.* at p. 11-12.

[55] *Id.* at p. 12.

[56] *Id.* at p. 6.  *See also* Rec. Doc. 28-1.

[57] *Id.* at p. 6.

were those involving dock-only activity, but all such dock jobs were shown on the reports."[58]

Cooper claims it construed any discrepancy in time spent aboard vessels in favor of Brewer for the purpose of the pending motion. Specifically, "Cooper has assumed for the purpose of the Motion to Remand that Brewer spent the maximum 15 minutes on average for each and every equipment check of all of the jobs he performed involving boats."[59] "Even though a large portion of Brewer's time during these 'dock & boat' jobs would be performed on the dock, for the purpose of the Motion to Remand, Cooper assumed that 100% of this combination 'dock & boat' jobs were performed in the boat and gave him credit for all job time."[60] "Even though Brewer admitted that he can travel five miles easily in 15 minutes, Cooper assumed that he spent 30 minutes round trip for each of the round trips that were five miles one way or less, giving more boat travel time than he actually spent."[61] Further, "Cooper assumed that Brewer spent 45 minutes for boat standby time on every buoy job using [Brewer's] exaggerated estimates," and "assumed 45 minutes for boat standby time for all 'dock & boat' combination jobs as well as tie ups involving buoy jobs," and "assumed five minutes boat standby time for all 'let go' jobs."[62]

Cooper concludes that "after construing all of the evidence generously in favor of Brewer, including any exaggerated estimates set forth in his testimony, and after the painstaking analysis of some 2,000 jobs, the evidence shows he cannot meet the 30% rule."[63] Specifically, Cooper claims

---

[58] *Id.* at p. 7.

[59] *Id.*

[60] *Id.*

[61] *Id.* at p. 8.

[62] *Id.* at p. 9.

[63] *Id.* at p. 9-10.

that Brewer's "four-year average yielded a total of 16.2% of Brewer's employment aboard boats/vessels."[64] Cooper avers that "[Plaintiffs'] Motion to Remand was supported by [Brewer's] affidavit which includes a number of legal conclusions, but does not controvert any of the factual information set forth above. [Plaintiffs] made no effort to compare the amount of time that [Brewer] worked aboard launch boats to his overall employment."[65] Further, Cooper contends that the "thirty percent rule" pertains to work done aboard vessels, but that Brewer's affidavit instead only states, "I spent 70 to 80% of my jobs assigned as a boat operator in connection with those jobs."[66]

Moreover, Cooper argues that Brewer's affidavit "is silent as to the percentage of time he spends on vessels compared to his overall employment. [He] ignores that a ten minute boat job may involve two or three hours highway travel. The affidavit ignores his land-based job duties which include his either driving or riding an average of 1,800 miles per month in the course and scope of his employment which subjects him to substantially greater risks of highway driving than either dock based or vessel based hazards."[67]

In the opposition filed by SGS, it argues that while Brewer was employed as a linesman or line handler, he was a longshoreman instead of a Jones Act seaman.[68] SGS agrees with Cooper's analysis that Brewer's time aboard vessels was minimal, even when all disputes are resolved in Plaintiffs' favor, and adopts all arguments made previously by Cooper.[69] SGS argues that "Brewer's

---

[64] *Id.* at p. 10.

[65] *Id.*

[66] *Id.* at p. 11 (citing *Nunez*, 288 F.3d at 271).

[67] *Id.*

[68] Rec. Doc. 31.

[69] *Id.* at pp. 1-2.

time aboard the launch boats was generally less than an hour (maximum) so driving the Cooper truck to and from the jobs would constitute the majority of [Brewer's] employment, even on days when [Brewer] worked only aboard the launch boats. There were many days that most or all jobs were performed solely from docks."[70]

In the supplemental memorandum, Plaintiffs argue against the inclusion of "standby" and travel time in calculating the total time of Brewer's entire employment to determine seaman status.[71] Plaintiffs state that seaman status is not to be denied as a matter of law because a worker lives, eats and sleeps ashore, and therefore Defendants improperly "include[] standby time, van travel time, home time, office standby time and retrieving fuel time" as working as a linesman as opposed to running vessels.[72] According to Brewer, "he worked 70% of his time from a vessel either as operator or linesman."[73] He states that his "work as a linesman is very similar to a tug captain who is performing barge fleet work and who goes home to rest even during his weekly hitch on."[74] According to Brewer, "[w]hat is important is whether the perils at sea are experienced by the worker, not the worker's time spent at home resting and eating."[75] Finally, Brewer claims that, under the savings to suitors clause, he "has the right to have a State Court Judge decide the seaman status

---

[70] *Id.* at p. 2.

[71] Rec. Doc. 38.  Brewer also addresses this argument in Plaintiff's Memorandum in Opposition to Motion for Summary Judgment on the Issue of Seaman Status, in which he objects to Cooper's focus on travel time which Brewer classifies as an "incidental function" of working as a linesman.  Rec. Doc. 36 at p. 2.  In sum, Brewer states that he "basically works as a captain performing linesman work by operating a vessel 70% of the time he performs linesman work.  It is incredulous to believe that Mr. Brewer is not exposed to the same perils of the sea/river as other captains, mates and deckhands and that his claim should be considered anything other than a seaman's claim."  *Id.*

[72] Rec. Doc. 38 at. p. 1 (citing *Senko v. La Crosse Dredging Corp.*, 352 U.S. 370 (1957)).

[73] *Id.*

[74] *Id.* at p. 2.

[75] *Id.*

12

issue and in particular, whether to include 'standby' time or not."[76]

In surreply, Cooper first argues that Brewer compares "a portion of his employment duties to a different portion of his employment duties instead of comparing the amount of time he spent aboard the vessels to his entire employment."[77] Specifically, Cooper claims that "Brewer is not saying he spent 70% of his overall employment aboard vessels of Cooper" but instead Brewer "is saying between the start time and end time of billed line handling jobs, he estimates he spent 70% of the time aboard vessels and 30% on land."[78] Cooper points out that the calculation proposed by Plaintiffs ignore portions of his sea-based employment (i.e. travel by boat to/from berths, standby time on boats, and equipment checks aboard boats) as well as other land-based portions of his employment that would count against a finding of seaman status (i.e. equipment checks of his truck, travel to/from Algiers to docks/ship mooring locations, travel to/from gas stations to fuel trucks and portable gas tanks, and other time spent on land between billed jobs in the course of his employment).[79] Therefore, Cooper still maintains that Plaintiffs fail to demonstrate that Brewer has met the 30% threshold.

Cooper argues that despite Plaintiffs contention that driving time should be ignored, this "flies in the face of *Chandris* which requires courts to look at the risks to which one is exposed (land vs. sea) when compared to one's overall employment.[80] Cooper claims that the only way Plaintiffs may establish that Brewer meets the appropriate temporal requirement to be a Jones Act seaman is

---

[76] Rec. Doc. 38 p. 2.

[77] Rec. Doc. 40 at p. 1.

[78] *Id.* at 2.

[79] *Id.*

[80] *Id.* at p. 3.

to "de-emphasize large portions of his employment (for which he was paid, including time when he was either driving or riding in company vehicles to get in position to do either land or boat jobs) because that portion of his employment does not support his allegation of seaman status."[81] Cooper contends that this methodology is irreconcilable with *Chandris* which requires a court to consider the "'location of his occupation taken as a whole.'"[82]

In addition, Cooper challenges Plaintiffs' use of the savings to suitors clause and *Senko* to support their position.[83]   Cooper claims that the savings to suitors clause "gives federal courts original jurisdiction of admiralty and maritime cases 'saving to suitors in all cases all other remedies to which they are otherwise entitled'" but "does not authorize changes in the substantive maritime law."[84] Specifically, Cooper states that the Louisiana Supreme Court has adopted the *Chandris* 30% rule.[85] Therefore, Cooper rejects Plaintiffs' argument that a state court judge is the appropriate person to decide if the "standby" time is appropriate in the calculation.

Furthermore, Cooper avers that *Senko* does not apply because the "case was decided before *Chandris* and was described as 'befuddling' by the United States Supreme Court in *McDermott International, Inc. v. Wilander*, 98 U.S. 337, 352-53 (1990)."[86] Cooper also claims that *Senko* does not apply to the facts of this case:

> Cooper concedes that if Brewer lived, ate, and slept ashore, but nevertheless spent more than 30% of his overall employment working on Cooper launch boats, then he

---

[81] *Id.* at pp. 3-4.

[82] *Id.* at p. 4 (quoting *Chandris*, 515 U.S. at 367).

[83] *Id.* at p. 4.

[84] *Id.* at pp. 4-5 (citing 28 U.S.C. 1331(1); *Green v. Industrial Helicopters, Inc.*, 593 So.2d 624 (La. 1992)).

[85] *Id.* at p. 5.

[86] *Id.* at p. 6.

would be eligible to elect seaman status.  However, those are not the facts in the Brewer case.  Brewer's counsel is instead arguing something different by ignoring 83% of the overall employment that Brewer spends on land.  *Senko* has no discussion of the percent of time that plaintiff spent aboard vessels because *Chandris* was decided 38 years later.[87]

Cooper therefore concludes that "[Plaintiffs] did not provide any basis to disregard the requirements set forth in *Chandris*, and as confirmed by the Louisiana Supreme Court, that he has to spend 30% of his overall employment aboard vessels to be eligible to elect seaman status.[88]

## IV.  Analysis

While Jones Act suits filed in state court are typically immune from removal, defendants may pierce the pleadings to show that a Jones Act claim has been fraudulently pled by a plaintiff to prevent removal.[89] For example, defendants may submit employment records to support their claim.[90] Defendants have done so here. Defendants analyzed over 2,000 jobs performed by Brewer to determine whether he qualifies as a Jones Act seaman.[91] Defendants, claiming to weigh all factors in favor of the Plaintiff, argue that the evidence demonstrates that at most Brewer spent 16.2% of his overall employment aboard his vessel.[92]

In contrast, Plaintiffs claim that Brewer spent 70-80% of his time as a boat operator contributing to the function of a vessel.[93] Further, Plaintiffs claim that Brewer spent over 30% of his

---

[87] *Id.* at p. 6-7.

[88] *Id.* at p. 7.

[89] *Lackey,* 990 F.2d 202 at 207.

[90] *Zertuche,* 306 Fed. App'x at 93

[91] Rec. Doc. 30 at p. 6.

[92] Rec. Doc. 30 at p. 10.

[93] Rec. Doc. 13-1 at p. 7.

employment time working in connection with a vessel. Brewer also argues that the Defendants'

calculations are incorrect because Brewer's standby and travel time as a linesman should not be

included as additional land-based work and count against the calculation of his percentage of time

aboard a vessel. In their calculations, Defendants include boat standby and linesman standby time

for all of Brewer's jobs, crediting him with time for both seaman and land based activity.[94] Neither

party has provided this Court with controlling authority directly on point to address whether this

activity should be included in the calculation. From the parties' briefs it is clear that the

substantiality requirement is hotly contested. As stated earlier, the burden is on a defendant to refute

a plaintiff's assertion that he is a Jones Act seaman when the defendant seeks removal, and all

doubts must be resolved in favor of the plaintiff.

In outlining the relevant law pertaining to the pending motion, this Court has already quoted

the Fifth Circuit in *Lackey*. However, the burden Defendants must meet in order to remove this case

is crucial to the pending motion and warrants repetition here:

> Defendants may abuse the assertion of fraud in the hope of achieving a federal
> adjudication of the merits of a disputable Jones Act claim. For that reason, the mere
> assertion of fraud is not sufficient to warrant removing the case to federal court..
> Defendants must prove that the allegations of the complaint were fraudulently made,
> and any doubts should be resolved in favor of the plaintiff. As in fraudulent joinder
> cases, defendants' burden of persuasion is a heavy one. The district court must
> resolve disputed questions of fact from the pleadings and affidavits in favor of the
> plaintiff. The removing party must show that there is no possibility that plaintiff
> would be able to establish a cause of action.[95]

Further, in order to remove a Jones Act case, a defendants must "demonstrate that parties-or

claims-are baseless in law and in fact and 'serve[ ] only to frustrate federal jurisdiction.'"[96] Here,

---

[94] Rec. Doc. 30 at p. 9.

[95] 990 F.2d at 208 (internal citations and quotations omitted).

[96] *Id.* at 207 (quoting *Dodd v. Fawcett Pub., Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).

Plaintiffs dispute the inclusion of standby time in the total calculation of Brewer's work history. In the absence of controlling authority that this time must be included in the calculation, this Court cannot say that Plaintiffs' claim that it should not be included is "baseless in law." Therefore, Defendants have not met their burden and this matter is appropriately remanded to state court.

### V.  Conclusion

In this matter the substantiality of Brewer's time spent doing seaman work is contested, and Defendants have failed to provide authority that standby time should be included in this calculation. As this Court must resolve all doubts in favor of Plaintiffs, this action must be remanded to state court. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand[97] is **GRANTED**;

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Twenty Third Judicial District Court, Parish of St. James.

**NEW ORLEANS, LOUISIANA**, this 7th  day of February, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[97] Rec. Doc. 13.